21751.   MACON BASEBALL ASSOCIATION INC. *v.*
PENNINGTON.

DECIDED MARCH 13, 1932.  REHEARING DENIED SEPTEMBER 27, 1932.

*E. F. Taylor, E. W. Maynard,* for plaintiff in error.

*Miller & Lowrey,* contra.

JENKINS, P. J. (After stating the foregoing facts.) 1. Under the express terms of the contract sued on, the plaintiff, Pennington,

in consideration for his becoming indorser for the defendant, was entitled to whatever amount the defendant actually received from the sale of the player Wright. The contract was not one by which the plaintiff was merely secured against loss which might result from his becoming indorser for the defendant, and any testimony which sought to show that such was the understanding of the parties at the time the contract was entered into was inadmissible, since it sought to vary the express terms of the written contract by proof of a contemporaneous parol agreement. Civil Code (1910), § 5788. Since the plaintiff's agreement to become indorser for the defendant, and his performance of this promise, afforded a consideration for the promise of the Macon club to pay over to the plaintiff the proceeds which it might receive from the sale of the player Wright, it was immaterial whether the plaintiff sustained any loss by reason of his having indorsed the notes of the defendant. Consequently the court properly rejected the testimony which sought to engraft a contemporaneous parol agreement onto the express terms of the written contract, and which sought to show that the plaintiff had sustained no loss by reason of his undertaking.

2. Whether or not the defendant, with the knowledge and connivance of the plaintiff, in order to obtain a higher price for the player Wright than might otherwise have been obtained, entered into an agreement known as a "cover deal," in violation of the rules of organized baseball, was not material to the issues made by the pleadings and the proof, since the only question involved was whether or not the Macon club had in fact received payment for the player Wright, and, if so, the amount of such payment. For the same reason it was not material to the instant controversy whether or not the agreement as entered into between the Atlanta club and the Macon club was a fraudulent transaction in that it was designed to prevent a major-league club, or a minor-league club of a higher class than the Macon club, from drafting the player Wright from the Macon club for a less price than he could be drafted for from the Atlanta club, and thus, as between the Atlanta club and the Macon club was an agreement which had for its purpose the defrauding of some third person. No question is made or decided as to any right of action the Macon club might have against the Atlanta club for the purchase-price of Wright, if owing and unpaid, and

no question is made as to any right of action the plaintiff, Pennington, might have against the Atlanta club, but the sole question involved was whether the Macon club had received payment for Wright, and, if so, what amount it had received in payment.

3. For the reasons stated in the foregoing division of the opinion, the rules of organized baseball, except in so far as they tended to throw light upon the issues of fact involved under the pleadings, were likewise immaterial.

4. While it is the general rule that a corporation can act only through its authorized agents, and the authority of such agents is to be found in the by-laws of the corporation, or its minutes, under the facts of the instant case, under the testimony of the witness Rucker, the Brooklyn club and Spiller had become joint owners of the Macon club under an agreement whereby each should have equal authority in the management of the affairs of the Macon club, and on an understanding that the witness Rucker was authorized to act for the Brooklyn club in this respect. The testimony of Rucker quoted in the statement of facts, to the effect that nothing was said by Spiller about transferring the player McCrone to Macon in payment for the player Wright previously purchased of Macon by the Atlanta club until after the instant litigation arose, and that Rucker then, as the representative of the Brooklyn club, declined to agree to the proposal made long after McCrone had been sent to the Macon club, was admissible not only as tending to impeach the testimony of Spiller, but as tending to establish the contention of the defendant that McCrone had not been transferred in payment for Wright, but pursuant to an agreement between Brooklyn and Atlanta for the operation of the Macon club. This testimony, with the further testimony on the same subject, raised an issue of fact as to whether or not the Macon club had received payment from the Atlanta club for the player Wright by reason of the transfer of the player McCrone in settlement of any indebtedness owing by Atlanta for the player Wright.

The testimony of the witness Rucker as to a previous statement made to him by Spiller to the effect that the player McCrone and another player named Spencer had been transferred to Macon in payment for Wright was properly limited to the purpose of impeachment, since it purported merely to relate a conversation between Rucker and Spiller, and Spiller had not testified that the player

Spencer was a part of the consideration paid to Macon for the player Wright. This court properly excluded other testimony to show that this statement by Spiller to Rucker was not true.

No question is made by the record, or here dealt with, as to whether any action by Spiller, as president of the Macon club, in accepting from the Atlanta club, of which he was also president and principal stockholder, the player McCrone in payment for the player Wright, for which latter player the Atlanta club had received $4,000 from Boston, constituted a fraud as against the Macon club; and no question is made, or here decided, as to whether Spiller could, in his capacity as president of the Atlanta club, offer McCrone to Macon in settlement of the debt owing by Atlanta to Macon, and then, in his capacity as president of the Macon club, accept McCrone as in such settlement. The only question here involved is whether or not McCrone actually was turned over to the Macon club in settlement of the debt owing to that club by the Atlanta club, and, according to the testimony of Rucker, this not only could not have been done without his consent, but was not attempted, since it was only after the institution of the suit that Spiller proposed such a disposition, and the proposal was flatly declined by Rucker as Brooklyn's representative.

5. It does not appear that the witness Spiller refused to answer any question material to the issue made by the pleadings and the evidence, such as could have authorized a rejection by the court of his entire testimony.

6. Any error of the court in refusing to permit the defendant to examine a witness called for cross-examination by the plaintiff was harmless, in view of the fact that the defendant subsequently introduced the same witness for direct examination.

7. The evidence tending to show the value of the player McCrone as much less than the amount received by the Atlanta club for the player Wright should have been admitted, since it threw light as a circumstance upon the issue made by the pleadings and the proof as to whether the player McCrone had been transferred to Macon in payment for Wright.

8. The evidence was in dispute as to whether the player McCrone had been transferred to Atlanta in payment for the player Wright, and, therefore, as to whether the Macon club had ever received anything of value for the player Wright, and for this reason the court erred in directing a verdict for the plaintiff.

9. The other errors complained of in the motion for a new trial are not such as are likely to occur on another trial for the determination of the issues made under the pleadings and the proof, and therefore are not dealt with.

*Judgment reversed. Stephens and Bell, JJ., concur.*

ON MOTION FOR REHEARING.

By a motion for rehearing the defendant insists that in its original opinion reversing the judgment of the court below directing a verdict in favor of the plaintiff, this court erroneously held that the rules of organized baseball were immaterial to the instant case, and that it was likewise immaterial whether or not the agreement entered into between the Atlanta club and the Macon club was a fraudulent transaction in that it was designed to prevent some major-league club, or minor-league club of higher classification, from drafting the player Wright from Macon for a less price than he could be drafted for from the Atlanta club. It is insisted that the parties to the contract were engaged in an illegal transaction, to wit, the defrauding of some third person, and that, therefore, the court should leave them where it found them. Counsel cite *Bugg* v. *Towner*, 41 *Ga.* 315; *Benson* v. *Georgian Co.*, 21 *Ga. App.* 448 (94 S. E. 644).

The contract between the Macon club and the plaintiff Pennington provided simply that Pennington should have and that the Macon club should pay over to him whatever the club received from the sale of the player Wright. That contract is the contract upon which the instant suit is based. Pennington says that the Macon club received $4,000 for Wright, and the Macon club says that it received nothing for Wright. There is no contention by counsel for the defendant that the contract between the Macon club and Pennington was a fraudulent contract, or that it had as its design the cheating and defrauding of some third person. But counsel say that even if the Macon club did receive something for Wright, it did so by a fraudulent scheme in which Pennington participated, and therefore the court should leave Pennington and the Macon club where it found them. If the Macon club were suing the Atlanta club for the proceeds of the player Wright (which the Atlanta club claims was paid by the transfer of the player McCrone), or if Pennington were suing the Atlanta club for the proceeds of the player Wright, there might be room for application of the doctrine of the

*Bugg* and *Benson* cases. There is none here, since Pennington's action is not based upon the contract between the two clubs, but on the contract between himself and the Macon club, and he is not suing for what that club might have been entitled to under its contract with the Atlanta club, but for what he contends the Macon club actually received for the player Wright.

But even if the contentions of counsel as to the applicability of the cases cited were correct, we see nothing fraudulent in the transaction as actually agreed upon between the two clubs. Wright was the property of the Macon club. It sold him to the Atlanta club, the agreement providing that a part of the purchase-price should be paid in cash, and reciting the receipt thereof, and that the balance should be paid on the opening day of the South Atlantic League the next season, if the Atlanta club did not return Wright by that time. This contract was approved by the authorities of organized baseball, after it had been examined by the proper official. It is not contended by counsel that there was any understanding or agreement between the two clubs which was not embraced within the written contract, except that the $500 recited as a cash payment had not been actually turned over. Nobody could have been defrauded by this fact. The Boston club drafted Wright for $4,000, but the draft price was fixed by the rules of organized baseball, and it made no difference what the purchase-price of Wright was, the draft price remained the same. The Boston club could not have been defrauded by this agreement, because it was under no obligation to take Wright from the Atlanta club for $4,000 or any other sum, and must have considered Wright worth the draft price, else it would not have drafted him. Under the agreement, the Atlanta club had a right to return Wright to the Macon club the next year, and pay nothing for him. This is what it is contended made it a "cover deal." But that fact appeared on the face of the contract, and was not concealed from the authorities of organized baseball, or any one else, so far as the record shows. It could not be said that Wright remained the property of the Macon club, because the Atlanta club had a right to keep him whether he was drafted or not, and he certainly did not remain the property of the Macon club after he was drafted by Boston. It is true the plaintiff contended that it was understood between the Macon club and the Atlanta club that if Wright should be

drafted by a major-league club the Atlanta club should pay the Macon club the draft price of $4,000 instead of the contract price of $5,000. This part of the agreement was evidently designed to protect the Atlanta club, since manifestly it could not agree to pay a balance of $4,500 on a player who might be drafted from it for $4,000 when it had no option as to whether it would sell the player for the $4,000. As we see it, the only question involved under the pleadings and the evidence is what amount, if any, the Macon club actually received from the sale of the player Wright. Whatever amount it did receive, if anything, under its contract with Pennington it owes to him.

*Rehearing denied. Stephens and Sutton, JJ., concur.*